**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| -------------------------------------------------------- : | |
| SHIVA STEIN, : | |
| : | |
| Plaintiff, : | Civil Action No. 22-cv-3832 |
| : | |
| v. : | **COMPLAINT FOR VIOLATIONS OF** |
| : | **SECTIONS 14(a) AND 20(a) OF THE** |
| TIVITY HEALTH, INC., RICHARD : | **SECURITIES EXCHANGE ACT OF** |
| ASHWORTH, ANTHONY M. SANFILIPPO, : | **1934** |
| SARA J. FINLEY, ROBERT J. GRECZYN, : | |
| JR., BETH M. JACOB, BRADLEY S. : | **JURY TRIAL DEMANDED** |
| KARRO, STEPHANIE DAVIS : | |
| MICHELMAN, and ERIN L. RUSSELL, : | |
| : | |
| Defendants. : | |
| -------------------------------------------------------- : | |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Tivity Health, Inc. ("Tivity Health or the "Company") and the members Tivity Health's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Tivity Health by affiliates of Stone Point Capital LLC ("Stone Point").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on May 10, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Titan-Atlas Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Titan-Atlas Parent, Inc., an affiliate of Stone Point, will merge with and into Tivity Health, with Tivity Health as the surviving entity (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 5, 2022 (the "Merger Agreement"), each Tivity Health stockholder will receive $32.50 in cash (the "Merger Consideration") for each Tivity Health share owned.

1.      As discussed below, Defendants have asked Tivity Health's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinions.

2.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tivity Health's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Stock Exchange, headquartered in this District and the proxy solicitor for the Company, Innisfree M&A Incorporated, is also headquartered in this District.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of Tivity Health stock and has held such stock since prior to the wrongs complained of herein.

8.      Individual Defendant Richard Ashworth has served as a member of the Board since 2020 and is the President and Chief Executive Officer of the Company.

9.      Individual Defendant Anthony M. Sanfilippo has served as a member of the Board since 2020.

10.      Individual Defendant Sara J. Finley has served as a member of the Board since 2018.

11.      Individual Defendant Robert J. Greczyn has served as a member of the Board since 2015.

12.     Individual Defendant Beth M. Jacob has served as a member of the Board since 2018.

13.     Individual Defendant Bradley S. Karro has served as a member of the Board since 2014.

14.     Individual Defendant Stephanie Davis Michelman has served as a member of the Board since 2022.

15.     Individual Defendant Erin L. Russell has served as a member of the Board since 2020.

16.     Defendant Tivity Health is a Delaware corporation and maintains its principal offices at 701 Cool Springs Boulevard, Franklin, Tennessee 37067.  The Company's stock trades on the NASDAQ Global Select Market under the symbol "TVTY."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

19.     Tivity Health provides fitness and health products and solutions in the United States. The Company offers SilverSneakers to members of Medicare Advantage, Medicare Supplement, and group retiree plans; Prime Fitness, a fitness facility access program through commercial health plans, employers, and other sponsoring organizations; virtual fitness experiences, including live instructor-led classes; and WholeHealth living program, a continuum of services related to complementary, alternative, and physical medicine. It also provides Wisely Well brand meals designed to support individuals and caregivers who are seeking meal

4

convenience, as well as those recovering after a hospitalization or living with chronic conditions. The Company was formerly known as Healthways, Inc. and changed its name to Tivity Health, Inc. in January 2017. Tivity Health was incorporated in 1981 and is headquartered in Franklin, Tennessee.

20.     On April 5, 2022, the Company announced the Proposed Transaction:

> NASHVILLE, Tenn., April 5, 2022 /PRNewswire/ -- Tivity Health® (Nasdaq: TVTY), a leading provider of healthy life-changing solutions, including SilverSneakers®, Prime® Fitness and WholeHealth Living®, today announced that it has entered into a definitive agreement to be acquired by funds managed by Stone Point Capital. Under the terms of the agreement, Tivity Health stockholders will receive $32.50 in cash per share, representing a total transaction value of $2.0 billion. Upon completion of the transaction, Tivity Health will become a privately held company, and its common stock will no longer be traded on Nasdaq.

> Anthony Sanfilippo, Chairman of the Board of Directors of Tivity Health, said, "This agreement with Stone Point creates immediate and substantial value for shareholders while ensuring the company continues to help SilverSneakers members live healthier, happier and more connected lives as a leading senior fitness and health improvement platform. This transaction is the culmination of an extensive review of strategic alternatives that the Board initiated after receiving an unsolicited proposal from Stone Point. As part of that review, the Board engaged with numerous potential acquirers with the assistance of outside advisors. The Board unanimously agreed that the transaction with Stone Point is the best opportunity for maximizing the value of Tivity Health. I am proud of what this company has accomplished for all stakeholders, in navigating the pandemic, streamlining and focusing the business, and executing on its strategy. Because of our team's incredible work and dedication, over the past twelve months, Tivity Health stock has delivered a return of approximately 40%, and since February 28, 2020, has delivered a 155% return."

> Richard Ashworth, President and Chief Executive Officer of Tivity Health commented, "Stone Point recognizes the value of our brands, our well-known senior fitness and health improvement platform, and our world-class team. In the past two years, we have strengthened the business and look forward to working with Stone Point as we continue to innovate and expand on the healthy, life-changing solutions we provide to members, clients and partners."

Chuck Davis, CEO of Stone Point, said, "We have followed Tivity Health's success for many years and have admired the positive impact it has had on the health and well-being of seniors who participate in its programs. We believe that the company is well positioned to leverage its market leading SilverSneakers® brand to capitalize on attractive secular tailwinds. We look forward to working with the company to broaden its service offerings to seniors to assist them in leading healthier lives. Stone Point is thrilled to partner with the Tivity Health management team to support the company in its next phase of growth."

**Transaction Details**

The $32.50 in cash per share to be received by Tivity Health stockholders represents a 20% premium to the 90-day volume-weighted average price (VWAP) ending April 4, 2022. Fully committed debt financing has been obtained and the transaction is not subject to a financing condition. The transaction is expected to close in or prior to the third quarter of 2022, subject to the receipt of shareholder approval, regulatory approval and other customary closing conditions. Following completion of the transaction, Tivity Health will become a privately held company.
Richard Ashworth will remain President and Chief Executive Officer of Tivity Health, upon closing of the transaction, and the Company will maintain its headquarters in Franklin, Tennessee and its campus location in Chandler, Arizona.

**Advisors**
Lazard is acting as the exclusive financial advisor to Tivity Health and Bass Berry & Sims PLC is serving as legal counsel to the Company. Truist Securities is acting as exclusive financial advisor to Stone Point and Kirkland & Ellis is serving as legal advisor to Stone Point.

* * *

21.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Tivity Health's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     <u>**The Materially Incomplete and Misleading Proxy Statement**</u>

22.     On May 10, 2022, Tivity Health filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

<u>*Omissions and/or Material Misrepresentations Concerning Financial Projections*</u>

23.     The Proxy Statement fails to provide material information concerning financial projections by Tivity Health management and relied upon by Lazard in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Lazard with forming a view about the stand-alone valuation of the Company.  Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Tivity Health management provided to the Board and Lazard. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24.      For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25.      When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26.      The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27.      Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable

GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

28.     With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails

to disclose: (i) the range of implied terminal values for Tivity Health; (ii) the inputs and

assumptions underlying the use of the perpetuity growth rates of 2.0% to 3.0%; (iii) the inputs and

assumptions underlying the use of the discount rates of 10.00% to 11.00%; (iv) the Company's

weighted average cost of capital and the inputs used for its calculation; and (v) the Company's net

debt as of March 31, 2022.

29.     With respect to Lazard's *Public Company Trading Analysis*, the Proxy Statement

fails to disclose the financial metrics and multiples for each company selected for the analysis.

30.     With respect to Lazard's *Precedent Transactions Analysis*, the Proxy Statement

fails to disclose the financial metrics for each transaction selected for the analysis, including: (i)

the implied total enterprise value of each transaction and (ii) each target company's estimated

TEV/LTM Adjusted EBITDA.

31.     With respect to Lazard's *Illustrative Leveraged Buyout Analysis*, the Proxy

Statement fails to disclose: (i) the inputs and assumptions underlying the required internal rate of

return in the range of 15.0% to 25.0%; (ii) the inputs and assumptions underlying a total leverage

ratio of approximately 6.7x to the Company's estimated LTM Adjusted EBITDA as of March 31,

2022; and (iii) the inputs and assumptions underlying an exit multiple of 12.0x.

32.     With respect to Lazard's *Premiums Paid Analysis*, the Proxy Statement fails to

disclose the companies selected and reviewed and the premiums paid for those target companies.

33.     With respect to Lazard's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the Wall Street research analysts and their published price targets for the Company.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Tivity Health within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Tivity Health, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Tivity Health, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Tivity Health, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 11, 2022                                    **MELWANI & CHAN LLP**

                                            By:   _/s/ Gloria Kui Melwani_
                                                  Gloria Kui Melwani
                                                  1180 Avenue of the Americas, 8th Fl.
                                                  New York, NY 10036
                                                  Telephone: (212) 382-4620
                                                  Email: gloria@melwanichan.com

                                                  _Attorneys for Plaintiff_

14